# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

RICKEY RYE and DORATHEA RYE,

    Plaintiffs,

v.

KIA MOTORS CORPORATION, KIA GEORGIA, INC., and KIA AMERICA, INC.,

    Defendants.

Case No.: _____

**JURY DEMAND**

## COMPLAINT

**COME NOW** the Plaintiffs, RICKEY RYE and DORATHEA RYE, to sue the Defendants, KIA MOTORS CORPORATION, KIA GEORGIA, INC., and KIA AMERICA, INC., for the claims stated herein. In support thereof, Plaintiffs state:

### THE PARTIES, JURISDICTION & VENUE

1. Plaintiff, RICKEY RYE ("Rickey"), is a Tennessee citizen, resident, and domiciliary.

2. Plaintiff, DORATHEA RYE ("Dorathea"), is a Tennessee citizen, resident, and domiciliary.

3. At all times material hereto, Rickey and Dorathea are married as husband and wife.

4. Defendant, KIA MOTORS CORPORATION ("Kia Motors"), is a South Korean corporation with its principal place of business located in South Korea.

5. Kia Motors may be served with process at 730-7 Mok-dong, Yangcheon-gu Seoul, Seoul, 07946 Republic of Korea.

6. Defendant, KIA GEORGIA, INC. ("Kia Georgia"), is a Delaware corporation with its principal place of business located in Georgia.

7. Kia Georgia may be served with process on its registered agent: The Corporation Company (FL), 106 Colony Park Drive, Suite 800-B, Cumming, GA 30040-2794.

8. Defendant, KIA AMERICA, INC. ("Kia America"), is a California corporation with its principal place of business located in California.

9. Kia America may be served with process on its registered agent: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of a state of which no Defendant is a citizen and the amount in controversy exceeds $75,000.

11. This Court is authorized to exercise personal jurisdiction over Kia Motors pursuant to Tenn. Code Ann. § 20-2-223 for at least the following reasons:

    a. Kia Motors transacts business in Tennessee and Plaintiffs' claims for relief against Kia Motors arise out of its transaction of business in Tennessee.

    b. Kia Motors contracts to supply services or things in Tennessee and Plaintiffs' claims for relief against Kia Motors arise out of its supply of services or things in Tennessee.

    c. Kia Motors caused tortious injury to Plaintiffs through its acts or omissions in Tennessee.

    d. Kia Motors caused tortious injury to Plaintiffs in Tennessee through its acts or omissions outside Tennessee, and Kia Motors regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

revenue from goods used or consumed or services rendered, in Tennessee.

12. The Court is additionally authorized to exercise personal jurisdiction over Kia Motors because Kia Motors enjoys numerous, continuous, pervasive, and systematic contacts with Tennessee and Plaintiffs' claims for relief against Kia Motors arise out of its contacts with Tennessee.

13. This Court's exercise of personal jurisdiction over Kia Motors comports with the due process requirements embodied within the United States Constitution and the Constitution of the State of Tennessee.

14. This Court is authorized to exercise personal jurisdiction over Kia Georgia pursuant to Tenn. Code Ann. § 20-2-223 for at least the following reasons:

   a. Kia Georgia transacts business in Tennessee and Plaintiffs' claims for relief against Kia Georgia arise out of its transaction of business in Tennessee.

   b. Defendant Kia Georgia contracts to supply services or things in Tennessee and Plaintiffs' claims for relief against Kia Georgia arise out of its supply of services or things in Tennessee.

   c. Kia Georgia caused tortious injury to Plaintiffs through its acts or omissions in Tennessee.

   d. Kia Georgia caused tortious injury to Plaintiffs in Tennessee through its acts or omissions outside Tennessee, and Kia Georgia regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Tennessee.

15. The Court is additionally authorized to exercise personal jurisdiction over Kia Georgia because Kia Georgia enjoys numerous, continuous, pervasive, and systematic contacts

with Tennessee and Plaintiffs' claims for relief against Kia Georgia arise out of its contacts with Tennessee.

16. This Court's exercise of personal jurisdiction over Kia Georgia comports with the due process requirements embodied within the United States Constitution and the Constitution of the State of Tennessee.

17. This Court is authorized to exercise personal jurisdiction over Kia America pursuant to Tenn. Code Ann. § 20-2-223 for at least the following reasons:

   a. Kia America transacts business in Tennessee and Plaintiffs' claims for relief against Kia America arise out of its transaction of business in Tennessee.

   b. Kia America contracts to supply services or things in Tennessee and Plaintiffs' claims for relief against Kia America arise out of its supply of services or things in Tennessee.

   c. Kia America caused tortious injury to Plaintiffs through its acts or omissions in Tennessee.

   d. Kia America caused tortious injury to Plaintiffs in Tennessee through its acts or omissions outside Tennessee, and Kia America regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Tennessee.

18. The Court is additionally authorized to exercise personal jurisdiction over Kia America because Kia America enjoys numerous, continuous, pervasive, and systematic contacts with Tennessee and Plaintiffs' claims for relief against Kia America arise out of its contacts with Tennessee.

19. This Court's exercise of personal jurisdiction over Kia America comports with the due process requirements embodied within the United States Constitution and the Constitution of the State of Tennessee.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims stated herein occurred in Clarksville, Montgomery County, Tennessee.

## FACTS RELEVANT TO PERSONAL JURISDICTION

21. Kia Motors, Kia Georgia, and Kia America (collectively, the "Kia Defendants") are subject to personal jurisdiction in Tennessee.

22. Kia Motors is in the business of and derives substantial revenue from designing, engineering, manufacturing, assembling, producing, inspecting, testing, distributing, selling, maintaining, repairing, and servicing a wide range of "Kia" brand motor vehicles for consumer purchase and use.

23. Kia Georgia is a subsidiary of Kia Motors that is in the business of and derives substantial revenue from designing, manufacturing, and distributing certain "Kia" brand vehicles throughout the United States, including to Tennessee, for consumer purchase and use.

24. Kia America is a subsidiary of Kia Motors that is in the business of and derives substantial revenue from distributing "Kia" brand vehicles throughout the United States, including to Tennessee, for consumer purchase and use.

25. On June 2, 2023, Rickey and Dorathea purchased a 2022 Kia Sorrento, VIN: 5XYRK4LF2NG160584 (hereinafter, "the Subject Vehicle") from an authorized Kia dealership located in Tennessee.

26. The Kia Defendants are responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and selling "Kia" brand vehicles that are sold to consumers in the United States, including in Tennessee. The Subject Vehicle was designed and engineered by Kia Motors and Kia America, both of which are responsible for testing and

Page 5 of 20
Case 3:24-cv-00705    Document 1    Filed 06/07/24    Page 5 of 20 PageID #: 5

assuring the quality of the Subject Vehicle's design and engineering. The Subject Vehicle was manufactured, assembled, and produced by Kia Georgia at Kia Georgia's assembly plant located in West Point, Georgia. After the Subject Vehicle was assembled, Kia Georgia sold and distributed the Subject Vehicle to an authorized Kia dealership in Tennessee, which in turn sold the Subject Vehicle to Rickey and Dorathea.

27. At all times material hereto, Kia Motors, Kia Georgia, and Kia America knew, intended, and expected that the "Kia" brand vehicles they make and distribute, including the Subject Vehicle, would enter Tennessee's stream of commerce and would be purchased and used by Tennessee consumers.

28. At all times material hereto, Kia Motors, Kia Georgia, and Kia America knew, intended, and expected that they would earn substantial revenues from the sale of the "Kia" brand vehicles they make, distribute, and sell into Tennessee, including the Subject Vehicle,

29. The Kia Defendants have a national dealership network that includes many dealerships in Tennessee, which market and sell new Kia vehicles, service Kia vehicles, honor Kia warranties, and carry out necessary vehicle recall work which Kia requires.

30. A significant segment of the Kia Defendants' gross income for sales, service, and repair work derives from the activities of their dealership network in Tennessee.

31. The Kia Defendants also monitor their vehicles, such as looking at customer complaints or feedback from distributors and dealers, including in Tennessee.

32. The Kia Defendants keep records of how many vehicles ship to each state, including Tennessee.

33. The Kia Defendants have offices, employees, and authorized representatives throughout the United States, including in Tennessee.

34. The Kia Defendants have been a party to numerous cases where they have come into federal and state courts in Tennessee to answer claims about the failure of Kia vehicles in Tennessee.

35. The Kia Defendants have been a party seeking relief or review in numerous cases where they have purposefully availed themselves of the jurisdiction of the courts of Tennessee by serving as the petitioner, appellant, or removing party in such actions.

36. The Kia Defendants spend substantial sums of money and utilize Tennessee's television, radio, newspaper, and Internet networks to advertise, market, and promote Kia vehicles in Tennessee and to Tennessee consumers.

37. The Kia Defendants routinely use Tennessee's roadways, highways, railways, bridges, waterways, airports, seaports, power plants and electrical grids, telephone networks, and computer networks to distribute, transport, and sell Kia vehicles in Tennessee.

38. The Kia Defendant intentionally design their vehicles to try to comply with all federal and state laws, regulations, and safety standards applicable to motor vehicles sold in Tennessee.

39. The Kia Defendants have active Internet websites accessible in Tennessee through which they engage in the advertisement and sale of Kia vehicles directly to Tennessee consumers. Each website has numerous interactive features. Kia America's website is www.kia.com. This website features its logos in prominence at the top of the web page. Kia's copyrighted website home page has active features such as a link which Tennessee consumers can click to access a page where they can exchange information and directly purchase officially licensed Kia merchandise. Each web page also has a pull-down menu tab which allows Tennessee consumers to find an authorized dealer nearby for Kia products. Each web page

solicits Tennessee consumers to exchange information about their home address and the year, make, and model of their respective Kia vehicle to directly purchase official Kia automotive parts tailored to their specific vehicle, so they can have those parts shipped directly to their home address in Tennessee.

40. The Kia Defendants authorize twenty-one dealerships in Tennessee that are responsible for advertising, selling, and servicing Kia vehicles in Tennessee. The Kia Defendants have contracts with these Tennessee-based Kia dealerships that govern terms such as use of the Kia Defendants' intellectual property and branding, and control the advertisement, marketing, and sale of Kia vehicles in Tennessee.

41. For these reasons and more, the Kia Defendants have purposely availed themselves to the exercise of personal jurisdiction in Tennessee, and there would be no burden on the Kia Defendants to defending the instant lawsuit in Tennessee.

## FACTUAL BACKGROUND OF CLAIMS

42. On July 16, 2023, Rickey was driving the Subject Vehicle and Dorathea was riding in the front passenger seat.

43. As Plaintiffs were fully stopped at a redlight at the intersection of North Riverside Drive and College Street, another vehicle collided with the rear of the Subject Vehicle.

44. Both Plaintiffs were properly seat-belted at the time of the collision, using both the lap and shoulder belts provided with the Subject Vehicle.

45. Upon impact, the Subject Vehicle's driver seatback malfunctioned, failed, and collapsed:



46. The collapse of the Subject Vehicle's driver seat caused a catastrophic spinal cord injury to Rickey, who remains permanently paralyzed to this day.

47. The Subject Vehicle and the Subject Vehicle's driver's seat are defective and unreasonably dangerous.

48. The defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat were present at the time they were designed, manufactured, and sold.

49. The defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat actually and proximately caused Plaintiffs' injuries and damages.

50. To the extent the Kia Defendants disclaim that they designed, manufactured, or distributed the Subject Vehicle and the Subject Vehicle's driver seat, Plaintiffs allege that the

designer, manufacturer, or distributor of the Subject Vehicle and the Subject Vehicle's driver seat is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as a basis for obtaining service of process.

## CONDITIONS PRECEDENT

51. All conditions precedent have been satisfied or excused.

## COUNT I—STRICT LIABILITY
(Rickey Rye v. Kia Motors)

52. Rickey re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

53. Kia Motors is responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and/or selling the Subject Vehicle and the Subject Vehicle's driver seat.

54. The Subject Vehicle and the Subject Vehicle's driver seat were in a defective and unreasonably dangerous condition when they left Kia Motors' final possession, custody, and control.

55. The defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat actually and proximately caused Rickey's injuries and damages.

**WHEREFORE**, Plaintiff, RICKEY RYE, demands judgment for this Count against Defendant, KIA MOTORS CORPORATION, in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000, for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II—NEGLIGENCE
### (Rickey Rye v. Kia Motors)

56. Rickey re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

57. Kia Motors is responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and/or selling the Subject Vehicle and the Subject Vehicle's driver seat.

58. The Subject Vehicle and the Subject Vehicle's driver seat were in a defective and unreasonably dangerous condition when they left Kia Motors' final possession, custody, and control.

59. Kia Motors owed a duty to properly design, engineer, manufacture, assemble, produce, import, and distribute the Subject Vehicle and to ensure the Subject Vehicle and its driver seat were not in a defective and unreasonably dangerous condition when they left Kia Motors' final possession, custody, and control.

60. Kia Motors owed a duty to provide adequate warnings, instructions, and information with the Subject Vehicle.

61. Kia Motors owed a duty to inspect, test, and assure the quality of the Subject Vehicle and the Subject Vehicle's driver seat before they left Kia Motors' final possession, custody, and control.

62. Kia Motors breached the above duties.

63. Kia Motors' breach of duty actually and proximately caused Rickey's injuries and damages.

**WHEREFORE**, Plaintiff, RICKEY RYE, demands judgment for this Count against Defendant, KIA MOTORS CORPORATION, in a fair and reasonable amount to be determined

by the jury and not to exceed $100,000,000, for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT III—LOSS OF CONSORTIUM
**(Dorathea Rye v. Kia Motors)**

64. Dorathea re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

65. At all times material hereto, Rickey and Dorthea are married as husband and wife.

66. Rickey suffered severe personal injuries as a result of the defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat.

67. Because of Rickey's injuries, Dorthea has lost and continues to lose the companionship, aid, affection, emotional support, love, society, services, and comfort entitled to her by virtue of her marriage to Rickey.

68. Kia Motors is legally responsible for causing Dorathea's loss of consortium injuries.

**WHEREFORE**, Plaintiff, DORATHEA RYE, demands judgment against Defendant, KIA MOTORS CORPORATION, in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000 for all damages recoverable by law, including costs and interest.

### COUNT IV—STRICT LIABILITY
**(Rickey Rye v. Kia America)**

69. Rickey re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

70. Kia America is responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and/or selling the Subject Vehicle and the Subject Vehicle's driver seat.

71. The Subject Vehicle and the Subject Vehicle's driver seat were in a defective and unreasonably dangerous condition when they left Kia America's final possession, custody, and control.

72. The defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat actually and proximately caused Rickey's injuries and damages.

**WHEREFORE**, Plaintiff, RICKEY RYE, demands judgment for this Count against Defendant, KIA AMERICA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000, for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT V—NEGLIGENCE
### (Rickey Rye v. Kia America)

73. Rickey re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

74. Kia America is responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and/or selling the Subject Vehicle and the Subject Vehicle's driver seat.

75. The Subject Vehicle and the Subject Vehicle's driver seat were in a defective and unreasonably dangerous condition when they left Kia America's final possession, custody, and control.

76. Kia America owed a duty to properly design, engineer, manufacture, assemble, produce, import, and distribute the Subject Vehicle and to ensure the Subject Vehicle and its driver seat were not in a defective and unreasonably dangerous condition when they left Kia America's final possession, custody, and control.

77. Kia America owed a duty to provide adequate warnings, instructions, and information with the Subject Vehicle.

78. Kia America owed a duty to inspect, test, and assure the quality of the Subject Vehicle and the Subject Vehicle's driver seat before they left Kia America's final possession, custody, and control.

79. Kia America breached the above duties.

80. Kia America's breach of duty actually and proximately caused Rickey's injuries and damages.

**WHEREFORE**, Plaintiff, RICKEY RYE, demands judgment for this Count against Defendant, KIA AMERICA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000, for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VI—LOSS OF CONSORTIUM
### (Dorathea Rye v. Kia America)

81. Dorathea re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

82. At all times material hereto, Rickey and Dorthea are married as husband and wife.

83. Rickey suffered severe personal injuries as a result of the defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat.

84. Because of Rickey's injuries, Dorthea has lost and continues to lose the companionship, aid, affection, emotional support, love, society, services, and comfort entitled to her by virtue of her marriage to Rickey.

85. Kia America is legally responsible for causing Dorathea's loss of consortium injuries.

**WHEREFORE**, Plaintiff, DORATHEA RYE, demands judgment against Defendant, KIA AMERICA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000 for all damages recoverable by law, including costs and interest.

## COUNT VII—STRICT LIABILITY
### (Rickey Rye v. Kia Georgia)

86. Rickey re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

87. Kia Georgia is responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and/or selling the Subject Vehicle and the Subject Vehicle's driver seat.

88. The Subject Vehicle and the Subject Vehicle's driver seat were in a defective and unreasonably dangerous condition when they left Kia Georgia's final possession, custody, and control.

89. The defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat actually and proximately caused Rickey's injuries and damages.

**WHEREFORE**, Plaintiff, RICKEY RYE, demands judgment for this Count against Defendant, KIA GEORGIA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000, for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT VIII—NEGLIGENCE
### (Rickey Rye v. Kia Georgia)

90. Rickey re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

91. Kia Georgia is responsible for designing, engineering, manufacturing, assembling, producing, testing, distributing, and/or selling the Subject Vehicle and the Subject Vehicle's driver seat.

92. The Subject Vehicle and the Subject Vehicle's driver seat were in a defective and unreasonably dangerous condition when they left Kia Georgia's final possession, custody, and control.

93. Kia Georgia owed a duty to properly design, engineer, manufacture, assemble, produce, import, and distribute the Subject Vehicle and to ensure the Subject Vehicle and its

Page 16 of 20
Case 3:24-cv-00705    Document 1    Filed 06/07/24    Page 16 of 20 PageID #: 16

driver seat were not in a defective and unreasonably dangerous condition when they left Kia Georgia's final possession, custody, and control.

94. Kia Georgia owed a duty to provide adequate warnings, instructions, and information with the Subject Vehicle.

95. Kia Georgia owed a duty to inspect, test, and assure the quality of the Subject Vehicle and the Subject Vehicle's driver seat before they left Kia Georgia's final possession, custody, and control.

96. Kia Georgia breached the above duties.

97. Kia Georgia's breach of duty actually and proximately caused Rickey's injuries and damages.

**WHEREFORE**, Plaintiff, RICKEY RYE, demands judgment for this Count against Defendant, KIA GEORGIA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000, for all injuries and damages he sustained, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT IX—LOSS OF CONSORTIUM
**(Dorathea Rye v. Kia Georgia)**

98. Dorathea re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

99. At all times material hereto, Rickey and Dorthea are married as husband and wife.

100. Rickey suffered severe personal injuries as a result of the defective and unreasonably dangerous condition of the Subject Vehicle and the Subject Vehicle's driver seat.

101. Because of Rickey's injuries, Dorthea has lost and continues to lose the companionship, aid, affection, emotional support, love, society, services, and comfort entitled to her by virtue of her marriage to Rickey.

102. Kia Georgia is legally responsible for causing Dorathea's loss of consortium injuries.

**WHEREFORE**, Plaintiff, DORATHEA RYE, demands judgment against Defendant, KIA GEORGIA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000 for all damages recoverable by law, including costs and interest.

## COUNT X—VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
**(Plaintiffs v. Kia Georgia)**

103. Plaintiffs re-allege and incorporate paragraphs 1 through 51 of this Complaint as if fully stated herein.

104. Plaintiffs purchased the Subject Vehicle.

105. The Subject Vehicle is Plaintiffs' personal property.

106. Kia Georgia designed, manufactured, assembled, produced, and distributed the Subject Vehicle and the Subject Vehicle's driver seat.

107. Kia Georgia conducted trade or commerce by designing, manufacturing, assembling, producing, and distributing the Subject Vehicle and the Subject Vehicle's driver seat.

108. When Kia Georgia finished manufacturing and assembling the Subject Vehicle, Kia Georgia affixed a sticker to the Subject Vehicle that states, "THIS VEHICLE CONFORMS TO ALL APPLICABLE U.S.A. FEDERAL MOTOR VEHICLE SAFETY AND THEFT PREVENTION STANDARDS IN EFFECT ON THE DATE OF MANUFACTURE SHOWN ABOVE." The date of manufacture referenced by this statement is October 13, 2022.

109. The Subject Vehicle and the Subject Vehicle's driver seat did not comply with Federal Motor Vehicle Safety Standard 207 in effect on October 13, 2022, which establishes the safety requirements for motor vehicle seats and seat assemblies for vehicles sold in the United States.

110. By representing that the Subject Vehicle complied with all Federal Motor Vehicle Safety Standards when it did not, Kia Georgia committed at least the following enumerated unfair or deceptive acts or practices:

    a. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

    b. Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

    c. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have; and

    d. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

111. Kia Georgia therefore violated the Tennessee Consumer Protection Act of 1977.

112. Kia Georgia's violation of the Tennessee Consumer Protection Act of 1977 actually and proximately caused actual damage to Plaintiffs and the Subject Vehicle and has rendered the Subject Vehicle inoperable and valueless.

113. Kia Georgia's violation of the Tennessee Consumer Protection Act of 1977 actually and proximately caused injury and damage to Plaintiffs.

**WHEREFORE**, Plaintiffs, RICKEY RYE and DORATHEA RYE, demand judgment against Defendant, KIA GEORGIA, INC., in a fair and reasonable amount to be determined by the jury and not to exceed $100,000,000, for all injuries and damages they sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, treble damages, mental anguish, emotional distress, pain and suffering, lost wages, attorneys' fees, costs, and interest, and for any such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

114. Plaintiffs, RICKEY RYE and DORATHEA RYE, hereby demand a trial by jury on all issues so triable.

Dated: June 7, 2024

Respectfully submitted,

*/s/ Burke Keaty*
R. Burke Keaty, II, BPR#027342
**MORGAN & MORGAN – NASHVILLE, PLLC**
810 Broadway, Suite 105
Nashville, Tennessee 37203
(615) 514-4205
bkeaty@forthepeople.com
*Attorney for Plaintiff*